IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


TERRI L. ALEXANDER,

                Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner
Social Security Administration,

                Defendant.

No. 01:12-cv-00693-HZ

OPINION & ORDER


Arthur W. Stevens, III
BLACK, CHAPMAN, WEBBER & STEVENS
221 Stewart Ave., Suite 209
Medford, OR 97501

       Attorney for Plaintiff


///


///


1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Ave., Suite 500
Portland, OR 97204-2902

Brett E. Eckelberg
Jeffrey R. McClain
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNCIL
701 Fifth Ave., Suite 2900
Seattle, WA 98104

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Terri L. Alexander brings this action seeking judicial review of the

Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand

for a determination of benefits.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on March 20, 2008, alleging an onset date of August 18, 2006.

Tr. 155-57, 174. Her application was denied initially and on reconsideration. Tr. 88-94, 95, 98.

      On April 14, 2010, plaintiff appeared with counsel for a hearing before an Administrative

Law Judge ("ALJ"). Tr. 33-87. During the hearing, plaintiff amended her onset date to January 1,

2008. Tr. 42-43. On May 28, 2010, the ALJ found plaintiff not disabled. Tr. 16-28. The Appeals

Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on several physical impairments, including

temporomandibular joint ("TMJ") issues, neck injuries, migraines, fibromyalgia, shoulder issues,

muscle pain, and joint pain. Tr. 179. At the time of the hearing, plaintiff was forty-seven years

old. Tr. 45. She received a General Equivalence Diploma ("GED") and has taken some college classes. Tr. 45. Plaintiff has past relevant work experience as a county civil deputy and county clerk. Tr. 27-28.

As a result of injuries from a motor vehicle accident in May 2002, plaintiff had TMJ surgery and suffered pain. Tr. 286. On August 18, 2006, plaintiff was in another motor vehicle accident. Tr. 248. As a result of the 2006 accident, plaintiff had a second TMJ surgery and experienced continuing pain. Tr. 248. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 1, 2008, the amended alleged onset date. Tr. 21. At step two, the ALJ found that plaintiff had the following severe impairments: (1) cervical spine degenerative disk disease and (2) bilateral fibrous, myofascial dysfunction, and occlusion of her TMJs. Tr. 21-22. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 24.

Next, at step four, the ALJ determined that plaintiff, despite her impairments, could perform past relevant work. Tr. 27. The ALJ found that the plaintiff had the ability to (1) perform light work, as defined in 20 C.F.R. § 404.1567(b); (2) lift twenty pounds occasionally and ten

pounds frequently; (3) sit, stand, or walk six hours in an eight-hour workday; (4) occasionally

climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and (5) occasionally reach and

work overhead. Tr. 24. Additionally, the ALJ found that plaintiff must avoid concentrated

exposure to hazards. Tr. 24. As part of that determination, the ALJ considered the medical

evidence and plaintiff's hearing testimony. As discussed in more detail below, the ALJ found

plaintiff's subjective limitations testimony not credible. The ALJ did not make a step five

finding. Based on his findings, the ALJ found plaintiff not disabled. Tr. 19.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal

quotation omitted). The court considers the record as a whole, including both the evidence that

supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational

interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal

quotation and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir.

2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not

substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) improperly rejecting the opinions and

conclusions of plaintiff's treating and examining physicians; (2) improperly rejecting plaintiff's

subjective symptom testimony; (3) improperly substituting his own opinion for plaintiff's treating and examining medical sources, making his own independent medical findings, and improperly failing to consider the combined effect of plaintiff's multiple impairments; (4) improperly rejecting the lay testimony of plaintiff's husband; and (5) improperly basing his decision on the vocational expert's (VE) incomplete hypothetical. Because I agree with the plaintiff as to the rejection of her subjective testimony and the rejection of the treating and examining physicians, I discuss only those particular objections.

I.    Physician Testimony

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Scott P. Anderson, D.M.D., and Dr. James F. Yanney, M.D., D.D.S. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 1527(d)(1)-(2), 416.927(d)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); *Orn*, 495 F.3d at 631.

Additionally, if the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons. *Id.* at 632. Even if the treating

physician's opinion is contradicted by another doctor, the ALJ may not reject the treating

physician's opinion without providing "specific, legitimate reasons" based on substantial

evidence in the record. *Id.*

    A.    Dr. Anderson

    Dr. Anderson is a maxillofacial surgeon and conducted an independent medical

evaluation of plaintiff on May 31, 2007. Tr. 332-341. Based on his review of plaintiff's medical

history, Dr. Anderson noted that plaintiff was "under the influence of significant amounts of pain

medication and as such should not be driving much less working." Tr. 340. The ALJ gave "no

weight" to this opinion. Tr. 24. The ALJ reasoned that Dr. Anderson's opinion was undermined

by the fact that plaintiff had actually worked in 2007 while taking the amount of pain medication

Dr. Anderson found to be incompatible with working. Tr. 24-25.

    In her March 20, 2008 Disability Report, plaintiff noted that after her initial alleged onset

date of August 18, 2006, she continued to work for four days. Tr. 179. On August 25, 2006,

plaintiff was unable to continue working because of the renewed pain caused by her August 18,

2006 motor vehicle accident. Tr. 179. Plaintiff noted there was "no work after this [August 25,

2006] date" and that the "earnings posted for 2007 [were] for sick pay." Tr. 174. Additionally,

plaintiff described her work ability after the accident: "I required surgery and physical therapy. I

took sick time along with vacation time until I exhausted all of my time that I had acquired over

my 19 years with Klamath County." Tr. 179.

    During the April 14, 2010 hearing, plaintiff testified that after her 2006 accident and

subsequent surgery in September, she stopped performing any actual work for the sheriff's

department. Tr. 50. Plaintiff continued to be paid until she formally left the department's

employment in August of the year following the accident and surgery. Tr. 50. Plaintiff testified

she was unable to remember the year of the accident or the year she formally left the department. Tr. 49-50.

Nonetheless, the record demonstrates she stopped working in 2006, soon after her August 18, 2006 accident, and formally left in 2007 after she exhausted her sick and vacation time. Other evidence in the record confirms that while she had income from her civil deputy position in 2007, she performed no actual work that year. *See* Tr. 169-170 (showing that plaintiff earned about half of her 2006 earnings in 2007); Tr. 352 (Dr. Yanney noted on June 20, 2007 that plaintiff was unable to return to work at that time and that he would re-evaluate on August 23, 2007); Tr. 324 (Dr. Albert, in his January 8, 2007 Independent Medical Examination, noted that plaintiff stated she had "not worked for quite a while"); Tr. 334 (Dr. Anderson, in his May 31, 2007 Independent Medical Evaluation, noted that plaintiff was not working at the time of the examination).

Substantial evidence in the record does not support the ALJ's determination that plaintiff continued working until December 31, 2007. Thus, the ALJ failed to provide clear and convincing or specific and substantial reasons for giving Dr. Anderson's testimony no weight.

B.    Dr. Yanney

Dr. Yanney is plaintiff's treating specialist and a maxillofacial surgeon. On June 20, 2007, Dr. Yanney noted plaintiff was unable to return to work at that time and that he would re-evaluate her on August 23, 2007. Tr. 352. Additionally, on June 28, 2007, Dr. Yanney noted that there was a good medical probability that plaintiff's limitations would lessen over the next sixty days such that she would be able to return to work two to four hours per day. Tr. 350.

The ALJ never mentioned Dr. Yanney's opinions. Defendant argues this was harmless error because the opinions were rendered before plaintiff's amended onset date, and thus, have

no probative value. Generally, medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir.1989). However, the ALJ may not omit evidence that is significant or probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (noting that an ALJ may not reject "significant probative evidence" without explanation). Nonetheless, such omissions may be harmless where they are "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1162.

Although Dr. Yanney's opinions related to a time period before the amended onset date, I reject defendant's argument that these opinions lacked probative value. Dr. Yanney's testimony is significant because he was plaintiff's long-time treating physician and plaintiff was under his regular care. Additionally, these opinions were rendered only a few months before plaintiff's amended alleged onset date. Importantly, Dr. Yanney opined not only that plaintiff was unable to work for a period of time, but that when she returned, it would be for only two to four hours a day. The ALJ should have considered this testimony probative to plaintiff's disability after January 1, 2008. It was not harmless error for the ALJ to disregard Dr. Yanney's testimony.[1]

---

[1] Additionally, plaintiff's counsel may have erred in agreeing to amend the onset date to January 1, 2008. Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities. 20 C.F.R. §§ 404.1571-72, 416.971-75; *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2000). Earnings are a presumptive, but not a conclusive sign of whether a job is substantial gainful activity. *Lewis*, 236 F.3d at 515. The record here demonstrates that plaintiff's lawyer agreed to amend the onset date based solely on plaintiff's earnings. Tr. 42. Because plaintiff performed no actual work involving significant mental or physical activities to obtain the 2007 earnings, she did not actually perform substantial gainful activity in 2007. Thus, Dr. Yanney's opinion has relevance and was probative because, but for the attorney's likely error, Dr. Yanney's opinions would have been made during plaintiff's period of disability and not before the onset date.

II.    Plaintiff's Credibility

The ALJ set forth the following reasons for finding plaintiff not credible: (1) her work history and work activity; (2) her activities of daily living; (3) her medical treatment; and (4) the lack of objective medical evidence.

The ALJ is responsible for determining credibility. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle*, 533 F.3d at 1160 (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Additionally, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not

reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation marks and brackets omitted).

A.    Plaintiff's Testimony

During the hearing, the ALJ questioned plaintiff about her job working five days a month for First Choice Property Management. Tr. 47. Plaintiff said that she got the job because she knew the people from the sheriff's office and that the job was a "gift." Tr. 66. Even with working only five days a month, she had missed work. Tr. 66. In this position, plaintiff testified she was given "great leeway" and accommodations. Tr. 66.

Plaintiff testified that while she is able to perform household chores such as cooking and cleaning, she can perform these tasks only on a good day. Tr. 54. Even on a good day, plaintiff cannot perform all of the tasks in one day. Tr. 54-55. To some level, plaintiff is able to track her income, pay the bills, and manage her checking account, but these tasks have become "a challenge." Tr. 55. Plaintiff testified she was able to grocery shop, drive, and care for her basic personal hygiene. Tr. 54. Nonetheless, her ability to perform these tasks depends on how she is feeling that day. Tr. 55.

Plaintiff testified that she did not feel capable of working a full-time job due to headaches and pain in her jaw, neck, and shoulders. Tr. 50-51. The headaches force her to withdraw to her bedroom with the lights off and to lie down. Tr. 68. About seven days a month her headaches and jaw pain are debilitating to the point "where [she is] just in bed." Tr. 65. Other days, even if she is up, she is unable to "function to a great capacity." Tr. 65-66.

When asked about limitations in speaking, Plaintiff testified that her jaw can lock at any time during a conversation. Tr. 67. Plaintiff testified that about three times a week her jaw "slip[s]" in a way that interferes with her ability to speak. Tr. 69.

Additionally, plaintiff testified that while she was unsure how long she could stand, she thought that in an eight-hour day with normal breaks, she could stand for a half hour at the most before needing to take a break. Tr. 56. She thought she would be able to stand for three hours in an eight-hour day if she was able to take breaks. Tr. 56-57. When plaintiff stands for a "lengthy" period of time, such as a half hour, she experiences pain in her shoulders. Tr. 56. Thus, she testified that "standing can be an issue." Tr. 56.

Plaintiff testified that Dr. Yanney told her that she could not lift over five pounds because of her jaw. Tr. 57. Plaintiff additionally testified that Dr. Yanney had instructed her not to sit at a computer and work on a keyboard. Tr. 58. The difficulty with keyboarding or other fine manipulation is that when her hands are out, it bothers her jaw and shoulders. Tr. 61. Attempting to sit at a table with her hands in front of her, like typing at a keyboard, would cause pain in the muscles of her shoulders, which would then come around and aggravate her jaw muscles. Tr. 68.

The ALJ asked plaintiff about her ability to get along with the general public and she testified that she would not have the patience if she was not feeling well. Tr. 63. She feels she is not as organized as she was before and she has difficulty with her memory. Tr. 52.

B.    Work History and Activity

The ALJ concluded that plaintiff's work history and work activity were inconsistent with her testimony. Tr. 25, 27. As to her work history, the ALJ stated that plaintiff had testified to working as a civil deputy until her amended onset date of January 1, 2008. Tr. 21. The ALJ found this work was at a level of substantial gainful activity. Tr. 25. For the reasons previously

explained, the ALJ erred in finding that plaintiff worked through 2007. Instead, the plaintiff's work history is consistent with her alleged limitations.

Further, the ALJ noted that plaintiff's work for First Choice Property Management was contrary to her claimed disability. Tr. 27. The ALJ failed to offer a clear and convincing reason for why the plaintiff's work for First Choice Property Management was contrary to her alleged disability, because plaintiff testified that despite being given great leeway and accommodations in this position, she had still missed work. The ALJ's description of her work activity was not entirely accurate. As a result, the evidence in the record does not support the ALJ's determination that plaintiff's work history and activity is inconsistent with her subjective testimony.

C.       Activities of Daily Living

The ALJ found that plaintiff's "lifestyle [was] contrary to [her claimed] disability" based on plaintiff's testimony about being able to attend to her personal hygiene, shop, drive, perform household chores, and pay bills. Tr. 27. However, the ALJ failed to account for plaintiff's testimony that she could not do these tasks when she was not feeling well, or that even when she was feeling well, she could not perform all of these tasks in one day. An ALJ's findings cannot be based on "paraphrasing of record material" that is "not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (finding that the ALJ mischaracterized claimant's statements to reach the conclusion that claimant had exaggerated her symptoms). The ALJ's characterization of plaintiff's lifestyle was not entirely accurate. Therefore, the ALJ failed to provide clear and convincing reasons for concluding that plaintiff's activities of daily living were inconsistent with her claim of disability.

D.    Medical Treatment

The ALJ concluded that plaintiff's medical treatment was inconsistent with her claimed impairments. The ALJ noted that "[e]ntirely at odds with a declining temporomandibular joint condition since January 1, 2008, as alleged, the claimant has . . . sought increasingly infrequent care." Tr. 26. Further, the ALJ relied on Klamath Pain Clinic progress notes to show that plaintiff did not seek treatment for her TMJ condition between December 2007 and May 2008. Tr. 26. With respect to plaintiff's headaches, the ALJ noted that no physician had witnessed ongoing symptoms or referred plaintiff to a specialist or neurologist. Tr. 22.

The ALJ improperly rejected plaintiff's testimony based on her decreased medical treatment. After her amended alleged onset date of January 1, 2008, plaintiff was financially unable to continue treatment because her insurance was canceled at the end of December 2007. Tr. 469-470. On October 1, 2008, Plaintiff's primary care provider, Judy Olson, F.N.P., noted plaintiff was seeing only Dr. Gilbertson occasionally, "secondary to $." Tr. 624. At the hearing plaintiff testified that she was seeing only Olson and taking medication. Tr. 52-53.

An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair*, 885 F.2d at 603. However, no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn*, 495 F.3d at 638. A claimant's inability to afford treatment justifies the failure to seek treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Plaintiff's insurance ended after she stopped working, and the record indicates that she was unable to afford the types of treatments she received with insurance. Additionally, plaintiff

continued to take medications for her impairments, which is consistent with her testimony about her condition.

E.    Objective Medical Evidence

The ALJ found that plaintiff's testimony about the "intensity, persistence and limiting effects" of her impairments was not credible to the extent it was inconsistent with the residual functional capacity. Tr. 27. The ALJ stated "[t]here simply is not enough objective medical evidence to make the claimant's allegations of temporomandibular joint dysfunction and pain readily believable. Telling here is the fact that no medical source, at any time, even remotely supports the claimant's claims. This is not indicative of someone with debilitating jaw impairment." Tr. 25. The ALJ found further inconsistencies between the medical evidence of plaintiff's back and her testimony. Tr. 22. Additionally, the ALJ concluded the plaintiff's headaches lacked objective signs that would "impose work-related limitations." Tr. 22.

The problem here is that the record does not support the ALJ's rejection of plaintiff's testimony for any of the previous reasons he asserted. Therefore, the lack of objective medical evidence is the only basis remaining. Even assuming the ALJ's interpretation of the medical evidence is correct, the ALJ cannot reject plaintiff's testimony solely because of a lack of objective medical evidence.

III.    Vocational Expert's Incomplete Hypothetical

The hypothetical presented to the VE is derived from the RFC. To be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations. *Valentine*, 574 F.3d at 690. An incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert." *Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996). As a result of the errors in rejecting Dr. Anderson's and Dr.

Yanney's testimony as well as plaintiff's subjective testimony, the hypothetical presented to the VE was incomplete. Therefore, the ALJ's step four finding is not supported by substantial evidence.

IV.    Remand for Benefits

Plaintiff argues that the case should be remanded for an award of benefits. The decision of whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "'(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

First, the ALJ improperly rejected Dr. Anderson's and Dr. Yanney's opinions as well as plaintiff's subjective testimony. The RFC failed to adequately reflect plaintiff's limitations. As a

result, the ALJ failed to solicit appropriate testimony from the VE about the effect of plaintiff's limitations.

Second, there are no further issues that need adjudication upon remand. Neither party argues that the record is insufficient, and I find the record sufficiently developed.

Third, the ALJ would be required to find plaintiff disabled if plaintiff's testimony is credited as true. Plaintiff testified that seven days a month she is in bed due to pain. The VE testified that missing only one day per month is unacceptable to most employers. Tr. 83. The VE also concluded that the inability to lift more than ten pounds and the need to have flexibility in positioning her head would preclude a return to plaintiff's past relevant work or other significant work in the national economy. Tr. 79-80. If the plaintiff's testimony is credited as true, the ALJ would be required to find that plaintiff cannot perform past relevant work or engage in other types of substantial gainful activity that exist in the national economy. A remand for benefits is appropriate.

CONCLUSION

This case is remanded for an award of benefits.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013.

MARCO HERNANDEZ
United States District Judge